W. SHARP, Judge,
dissenting.
I respectfully dissent. The state appeals from the trial court’s order suppressing evidence seized inside a residence pursuant to a search warrant. The evidence suppressed consisted of: residency documents, plastic and paper bags containing cannabis, rolling papers, lighters, hemostats, a pipe, two photographs, a triple beam scale, and numerous empty plastic and paper bags. The trial court relied upon Howard v. State, 483 So.2d 844 (Fla. 1st DCA 1986). I would reverse.
Cannabis plants were spotted growing next to appellees’ (Stephen and Sandra Waring’s) residence by an experienced deputy on a routine air patrol from an altitude of 1,000 feet. He descended to 500 feet and that confirmed the plants were cannabis. He later went to the residence. From the street he was able to see cannabis plants growing above the top of an eight-foot fence, which enclosed an area approximately fifteen by twenty feet, adjoining the residence. One end of the fence abutted the wall of the residence and the other ran to the enclosed screen porch at the rear of the residence.
The affidavit made in support of the application for a search warrant stated:
Due to the proximity of the plants with the target residence, your affiant has reason to believe that implements of cultivation and/or documentation establishing ownership and/or control, of the growing area will be found within the target residence itself.
There were also allegations that the police had received unverified tips that the occupants of the house were involved in selling cannabis, that at least one occupant of the house was currently aware the deputy was seeking a search warrant, and that any delay would afford them the opportunity to destroy or conceal the contraband.
The magistrate issued a search warrant in which he certified there was probable cause to believe laws have been and were being violated at the target premises. The residence and curtilage were specifically described. The magistrate stated: “[TJhere is now being kept at the target location cannabis plants, implements of cultivation, documents lending [sic] to establish ownership and/or control of the residence.”
There was no showing or allegation in this record that any of the information in *688 the affidavit was false or that the affiant should have known it was false. The affidavit was properly executed, and the search warrant was duly issued. The search, in fact, resulted in seizure of cannabis plants growing within the fenced enclosure adjacent to the residence and screened porch. Parts of plants, seeds, bags, papers, tools used for cultivation, scales, a pipe, and string, were found inside the residence.
The issues in this case are whether the magistrate had sufficient basis to believe, first, that there was a fair probability that laws prohibiting possession, sale, cultivation, etc., of cannabis were being violated inside the Warings’ residence;[1] or, second, that “[a] weapon, instrumentality or means by which a felony has been committed, or evidence relevant to proving said felony has been committed, is contained therein.” § 933.18(6), Fla.Stat. (1987). Further, such a conclusion of fair probability rests on “a common sense assessment of the totality of the circumstánces.”[2]
Based on the practicalities of life and common sense, we can assume that cannabis plants do not spring from the ground and flourish over eight feet in height without assistance from persons living immediately adjacent to them in a residence which, together with a fence, encloses them from outside view. Tools for cultivation and other growing aids most likely will be located in the residence, since in this case there was no other structure nearby, such as a barn or greenhouse. Further, common sense also supports the conclusion that cannabis plants are not grown for ornamental purposes. Seeds and leaves must be harvested, cleaned, weighed and packaged. These types of activities do not take place outside. The most probable place is clearly the adjacent residence, particularly since the police had received tips that the occupants of the residence were engaged in selling cannabis.
The court in Howard stated:
In our view, although a fair probability may exist that, if contraband is growing immediately outside a home, contraband might be found also inside the home, in the absence of any allegations to that effect in an affidavit for search warrant, an affidavit cannot be said to present a substantial basis of probable cause for the search of the interior of the home, [emphasis supplied]
Howard at 483 So.2d 847. In this case, the affidavit made the very allegations which the Howard court found lacking in that case. The affiant said evidence and implements of criminal violations would likely be found inside the residence, based on its immediate proximity to the plants and tips regarding the sale of cannibis.[3]
In Thompson the First District disregarded its own dictum in Howard. It held that even though the affiant asserted he believed contraband would be found in a trailer used as a residence, and that sales were conducted there, the affidavit still was fatally defective to justify a finding of *689 fair probability to search the dwelling, because the affidavit contained no asserted facts other than proximity. I disagree. Under some circumstances, proximity may be sufficient. Howard; Rowell. Additionally, the Thompson court did not consider section 933.18(6), which permits a search for the instruments or means by which a felony has been committed, or evidence relating to its commission.
Finally, assuming, arguendo, even if the search warrant in this case were lacking in sufficient factual allegations to establish a fair probability to search the residence, there is no reason to conclude that the officers who executed it were not acting in good faith reliance on the magistrate’s probable cause determination. Accordingly, the seized evidence was admissible. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Garcia, 503 So.2d 347 (Fla. 5th DCA), rev. denied, 511 So.2d 298 (Fla.1987). When there is only a possibility — not a fair probability — that contraband, implements or evidence of a felony will be found in a target dwelling, and the affidavit is not based on false information, the search warrant is duly issued, and the officers act on it in good faith (as in this case), the Leon good faith exception should be applied. Garcia. Compare State v. Stokes, 550 So.2d 519 (Fla. 1st DCA 1989); Griffith v. State, 532 So.2d 80 (Fla. 3d DCA 1988); contra, Thompson v. State.

. Rowell v. State, 544 So.2d 1089 (Fla. 1st DCA 1989); Howard v. State, 483 So.2d 844 (Fla. 1st DCA), rev. denied, 494 So.2d 1153 (Fla.1986); § 933.18(5), Fla.Stat. (1987).

. Thompson v. State, 548 So.2d 806 (Fla. 1st DCA 1989); Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); Machado v. State, 363 So.2d 1132, 1135 (Fla. 3d DCA 1978), rev. denied, 373 So.2d 459 (1979); Brinegan v. U.S., 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

. The United States Supreme Court noted in Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), endorsed the "totality-of-the-circumstances" approach to probable cause. This approach, according to the Supreme Court, permits a balanced assessment of the relative weights of all the various indicia of reliability and unreliability attending an informant’s tip because one simple rule would not cover the great variety of informants’ tips. The Court mentioned, in fact, that if a more rigorous standard were applied, "anonymous tips would be of greatly diminished value in police work ...” 462 U.S. at 237, 103 S.Ct. at 2332.
Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise ‘perfect crimes.' While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.

Id.